s

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| RICARDO BRUNO and RACHEL BRUNO,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>Defendants. | Case No.: SACV 17-01301-CJC(JEx)<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR APPOINTMENT OF RACHEL BRUNO AS GUARDIAN AD LITEM FOR D.B. AND L.B. [Dkt. 69] AND GRANTING EX PARTE APPLICATION TO APPROVE MINORS' COMPROMISE OF A POTENTIAL CLAIM [Dkt. 70]** |

## I. INTRODUCTION

Plaintiffs Rachel and Ricardo Bruno filed this action after their children, D.B. and L.B., were seized from them, allegedly without a warrant and under nonexigent circumstances. (Dkt. 27 [First Amended Complaint, hereinafter "FAC"].) Plaintiffs have

since reached settlement agreements with Defendants.  Part of those settlement agreements involve the release of potential claims by D.B. and L.B.  Before the Court are Petitioner Rachel Bruno's ex parte applications for (1) appointment as the guardian ad litem for D.B. and L.B. and (2) court approval of D.B.'s and L.B.'s compromise of a potential claim.  (Dkts. 69–70.)  For the following reasons, the ex parte applications are **GRANTED**.

## II.  BACKGROUND

The First Amended Complaint contains the following allegations.  Plaintiffs Ricardo and Rachel Bruno reside with their children, L.B. and D.B., in the County of Orange.  (FAC ¶ 5.)  In July 2015, L.B. was seven weeks old and D.B. was twenty months old.  (*Id.* ¶ 27.)  On July 7, 2015, Rachel, L.B., and D.B. spent the day in the home of L.B.'s and D.B.'s maternal grandmother.  (*Id.* ¶ 30.)  They returned home around 7:00 p.m.  (*Id.* ¶ 30.)  Rachel suffers from a seizure disorder, which requires her to have uninterrupted sleep.  (*Id.* ¶ 28.)  To ensure uninterrupted sleep, the Brunos hired a doula to help care for L.B.  (*Id.* ¶ 29.)  That night, the doula arrived for her shift and Rachel went to sleep.  (*Id.* ¶ 30.)  Ricardo was out of town on a business trip.  (*Id.*)

Around 4 a.m. on July 8, 2015, Rachel woke up and heard L.B. crying.  (*Id.* ¶ 31.)  Rachel went to L.B.'s room and saw the doula patting L.B. on the chest as he was laying face up in his crib.  (*Id.*)  Rachel sent the doula away and placed L.B. on her chest in an attempt to get him to sleep.  (*Id.*)  Rachel sat with L.B. until approximately 7 a.m.  (*Id.*)  Around 7 a.m., Rachel noticed that L.B.'s right arm was twitching.  (*Id.* ¶ 32.)  She attempted to feed L.B., but he would not eat.  (*Id.*)  L.B. then fell asleep until 9 a.m.  (*Id.*)

L.B. again refused to feed at 10 a.m., and Rachel put him back in the crib, noticing nothing unusual.  (*Id.* ¶ 33.)  When L.B. woke up at 10:30 a.m., Rachel noted that L.B.

was pale and appeared to be in pain. (*Id.*)  She called L.B.'s pediatrician and described the symptoms. (*Id.* ¶ 34.)  Since no appointment was available until 3:15 p.m., Rachel took L.B. to the hospital. (*Id.*)

Rachel brought L.B. to CHOC Children's Hospital of Orange County ("CHOC") while her mother watched D.B. (*Id.* ¶ 35.)  L.B. was admitted around 12:30 p.m. (*Id.* ¶ 37.)  He underwent a CT scan and was found to have a displaced skull fracture and hemorrhage. (*Id.* ¶ 38.)  He had to undergo an emergency procedure to remove the blood clot. (*Id.*)

Plaintiffs' claims arise from the actions taken afterwards.  At some time that evening, a CHOC employee contacted Orange County Social Services Agency. (*Id.* ¶ 41.)  A CHOC doctor gave the social worker a summary of L.B.'s injuries and informed the social worker that L.B. would be staying at the hospital through the morning of July 9, 2015. (*Id.* ¶ 43.)  There was allegedly sufficient time for a social worker to obtain a warrant if it appeared seizing the child was necessary to avert further injury. (*Id.*)  The social worker contacted the L.A. Sheriff's Department to request assistance. (*Id.* ¶ 45.)  The responding deputy and social worker then allegedly "badgered" Rachel about whether she had a seizure recently, and Rachel explained she had not had any recent seizures in the last two years and she was actively taking medication. (*Id.* ¶ 46.)  Rachel also told them that her husband had been out of town since July 5, 2015 but would be returning that evening. (*Id.* ¶ 47.)

Detectives from the Special Victims Bureau arrived around 12:30 a.m. on July 9, 2015. (*Id.* ¶ 50.)  They allegedly badgered Rachel about whether she had postpartum depression, and Rachel said she did not. (*Id.* ¶ 52.)  The detectives, deputy, and social worker then allegedly agreed to seize both L.B. and D.B., without prior judicial authorization or a court order, even though there were allegedly no exigent

circumstances. (*Id.* ¶¶ 52–53.) They placed a hospital hold on L.B. (*Id.* ¶ 58.) Around 2:30 a.m., they went to the grandmother's house and seized D.B., taking him to an emergency foster shelter. (*Id.* ¶¶ 64, 67.)

At the shelter, D.B. was allegedly subject to an intrusive and unwarranted forensic medical examination, despite a specific request from Ricardo to be present in the event of any such examination. (*Id.* ¶¶ 74, 77.) D.B. was apparently healthy and exhibited no signs of abuse. (*Id.* ¶¶ 76, 82.) D.B. was also administered seven vaccinations, without parental notice or consent and without a court order. (*Id.* ¶¶ 83, 91.) Defendants allegedly made no efforts to ascertain his medical history or determine what vaccinations he had received. (*Id.* ¶ 88.) One of the vaccinations included an ingredient to which D.B. had previous negative allergic reactions, so D.B.'s pediatrician and his parents had agreed to no longer administer that particular vaccine. (*Id.* ¶ 89.) D.B. remained in the shelter for over two days. (*Id.* ¶ 72.)

Rachel was forced to move out of the family home and had to abide by a limited visitation schedule. (*Id.* ¶ 102.) On July 20, 2015, L.B. was discharged from the hospital back to the care and custody of Ricardo. (*Id.* ¶ 103.)

On June 29, 2017, Plaintiffs filed this suit against Defendants County of Los Angeles, County of Orange, CHOC, Deputy Jason Schmoker, Detective Maricruz Perez, Detective Belen Lemus, Deputy J. Lee, Laura Todd, and Nicole Strattman. (Dkt. 1.) Plaintiffs assert two claims: (1) a claim under 42 U.S.C. § 1983 for unwarranted seizure, unwarranted medical examination, and unwarranted vaccinations, and (2) a claim under *Monell* against the County of Los Angeles, the County of Orange, and CHOC.

//

## III.  ANALYSIS

District courts have a special duty to protect the interests of litigants who are minors.  *See* Fed. R. Civ. P. 17(c); *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011).  Rule 17(c) requires a district court to appoint a guardian ad litem to protect a minor who is unrepresented in an action.  Fed. R. Civ. P. 17(c).  When the parties seek to enter into a settlement involving a minor, the Ninth Circuit has instructed district courts to "conduct [their] own inquiry to determine whether the settlement serves the best interests of the minor."  *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem").

District courts must limit their scope of review to whether the net amount distributed to each plaintiff is fair and reasonable, in light of the facts of the case, the plaintiff's specific claim, and recovery in similar cases.  *Robidoux*, 638 F.3d at 1181–82.  Courts should not evaluate the fairness of the recovery by comparing the minor's proportion of the total settlement value to the amount designated for competent co-plaintiffs or plaintiff's counsel.  *Id.* at 1182.  "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties."  *Id.*

### 1. Appointment of Guardian Ad Litem

Petitioner Rachel Bruno first requests that the Court appoint her as the guardian ad litem for minors D.B. and L.B.  (Dkt. 69.)  Courts appoint guardians ad litem for minors

pursuant to Federal Rule of Civil Procedure 17(c).  Rule 17(c) provides that "[t]he court must appoint a guardian ad litem . . . to protect a minor or incompetent person who is unrepresented in an action."  Fed. R. Civ. P. 17(c)(2).  At the time of this order, D.B. is five years old and L.B. is four years old.  (Dkt. 70-1 [Declaration of Shawn McMillan, hereinafter "McMillan Decl."] ¶ 17.)  Rachel Bruno is D.B.'s and L.B.'s mother.  (*Id.* ¶ 15.)  The Court **GRANTS** the request to appoint Rachel Bruno as the guardian ad litem for minors D.B. and L.B.

### 2. Approval of Settlement

Before the Court are three settlement agreements for approval: (1) the settlement with CHOC, (2) the settlement agreement with the County of Orange, Nicole Strattman, and Laura Todd, and (3) the settlement agreement with the County of Los Angeles, Belen Lemus, Jason Schmoker, Maricruz Perez, and J. Lee.  Although L.B. and D.B. have not yet filed any lawsuit—only their parents have—the settlement agreements require them to release their claims against Defendants.  In the aggregate, L.B. and D.B. will each receive $60,000 to fund the purchase of annuities.

Under the terms of the settlement agreement with CHOC, D.B. and L.B. will each receive $10,000 to fund the purchase of annuity.  (McMillan Decl. ¶ 18(a).)  The annuity purchased for the benefit of D.B. will pay a guaranteed lump sum of $14,674 on October 22, 2031.  (*Id.*)  The annuity purchased for the benefit of L.B. will pay a guaranteed lump sum of $15,589 on May 11, 2033.  (*Id.*)  CHOC will also pay $70,000 to Plaintiffs Rachel and Ricardo Bruno and their counsel.  (*Id.*)

The County of Orange, Nicole Strattman, and Laura Todd have agreed to settle for a total sum of $900,000.  (*Id.* ¶ 18(b).)  Out of those funds, D.B. and L.B. will each receive $25,000 to fund the purchase of an annuity.  (*Id.*)  The annuity purchased for the

benefit of D.B. will pay guaranteed lump sums of $13,000 on October 22, 2035 and $37,571.93 on October 22, 2043. (*Id.*) The annuity purchased for the benefit of L.B. will pay guaranteed lump sums of $14,250 on May 11, 2037 and $38,826.40 on May 11, 2045. (*Id.*) The remaining balance will be paid to Plaintiffs Rachel and Ricardo Bruno and their counsel.

The County of Los Angeles, Belen Lemus, Jason Schmoker, Maricruz Perez, and J. Lee has agreed to pay a total sum of $500,000 to settle and resolve Plaintiffs' unwarranted seizure claims. (*Id.* ¶ 18(c).) Out of those funds, D.B. and L.B. will each receive $25,000 to fund the purchase of an annuity. (*Id.*) The annuity purchased for the benefit of D.B. will pay guaranteed lump sums of $13,000 on October 22, 2035 and $37,571.93 on October 22, 2043. (*Id.*) The annuity purchased for the benefit of D.B. will pay guaranteed lump sums of $14,250 on May 11, 2037 and $38,826.40 on May 11, 2045. (*Id.*) The remaining balance will be paid to Plaintiffs Rachel and Ricardo Bruno and their counsel. (*Id.*)

The Court finds that the minors' net recovery is fair and reasonable in light of the facts of this case and recoveries in similar cases. Here, Defendants allegedly improperly seized L.B. and D.B. from their parents and subjected D.B. to unauthorized medical procedures. Although Defendants may have been well intentioned, L.B. and D.B. have a plausible claim that Defendants violated their constitutional right to familial association. No fee or cost claim is being made against the settlement proceeds assigned to the minors. (*Id.* ¶ 20.) Rather, D.B.'s and L.B.'s parents decided the best way to handle the settlement was to assign a presumed value to the violation of the minors' rights, based on other valuations assigned and approved by courts in similar cases. (*Id.*) The parents valued the violation at $60,000 per child, based on similar cases. One case, *B.R. v. County of Orange*, No. 8:15-cv-00626-CJC-PJW (C.D. Cal.), also involved the unwarranted seizure of a child from his mother's custody. In *B.R.*, the settlement

agreement allocated $50,000 of the total $375,000 settlement to the child as damages. (*Id.* ¶ 21.) Other cases have reached similar valuations. *See A.R. v. County of Riverside*, No. 5:14-cv-01991-VAP-SP (C.D. Cal.) (settling for total of $1,000,000, with $50,000 assigned as damages to each child for unwarranted seizure); *A.A. v. County of Riverside*, No. 5:14-cv-02556-VAP-SP (C.D. Cal.) (assigning value of $49,999 to child's damages for seizure from her mother's care at hospital without a warrant or exigent circumstances). In light of these similar cases, the Court finds that $60,000 per child is a fair and reasonable recovery.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Petitioner Rachel Bruno's ex parte applications for appointment as guardian ad litem for D.B. and L.B. and for approval of D.B.'s and L.B.'s compromise of a potential claim.

DATED:   July 18, 2019

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE